UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENJAMIN MADDISON,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF NORTHAMPTON, DAVID NAREWICZ, JODY KASPER *and* DAVID NETTO,<br><br>    Defendants. | Civil Action No. 20-30089-MGM |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 6)

April 9, 2021

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff Benjamin Maddison, proceeding *pro se*, filed a complaint in state court alleging claims of defamation, emotional stress, and a violation of the First Amendment against the City of Northampton, MA; David Narewicz, the mayor of Northampton; Jody Kasper, the police chief of the Northampton Police Department; and David Netto, a patrol officer of the Northampton Police Department. (Compl., Dkt. No. 1-3.) Defendants removed the case to this federal court under 28 U.S.C. § 1441(a) based on federal-question jurisdiction under 28 U.S.C. § 1331, on February 1, 2021. (Notice of Removal, Dkt. No. 1). Defendants moved to dismiss the case for failure to state a claim (Mot. Dismiss, Dkt. No. 6). For the reasons below, Defendants' motion to dismiss will be denied-in-part and granted-in-part.

II. BACKGROUND

Plaintiff alleges the following in his complaint, which the court accepts as true for the purpose of deciding the motion to dismiss. He is a resident of Northampton, Massachusetts. On January 12, 2020, Plaintiff was pulled over by an officer in the Northampton Police Department, by the name of Zantrofski, allegedly for speeding. Plaintiff thought the officer conducted himself in a rude and disrespectful manner. About three weeks later, Plaintiff observed a marked Northampton police cruiser stop in front of his vehicle, which was parked on private property. Zantrofski was in the passenger seat of the cruiser. Another officer in the cruiser took a photograph of Plaintiff's vehicle with her cell phone. Concerned, Plaintiff went to the police department where he was introduced to lieutenant Alan Borowski. Borowski informed Plaintiff that he did not want an issue and would speak to the officer. No official complaint was filed by Plaintiff that day.

Around another three weeks later, on February 20, Plaintiff was again at the police department to submit requests for records regarding his speeding citation and to request an update from Borowski. Borkowski assured Plaintiff he was handling the matter and would be in touch. Plaintiff left and, less than a mile from the police department, was pulled over by Defendant Netto. Netto called for backup, which was responded to by two officers, Moody and Digiamo. The three officers surrounded Plaintiff's car and accused him of having illegal window tint and a sticker that obstructed his windshield. Plaintiff responded by showing the officers that his car had passed inspection. Nevertheless, Moody asserted Plaintiff applied the tint after the inspection. Plaintiff was upset by the interaction and told the officers they were harassing him because he had just left the station regarding a complaint against an officer.

Based on this incident, Plaintiff thought there was reason to believe Borowski and Netto were perpetuating a cycle of harassment against him. He officially filed an internal affairs complaint against the two. He did not file complaints against Moody and Digiamo because they had been

called to the scene after the stop was initiated. Captain Cartilage was present during the filing of his complaint. One week later, on February 27, Plaintiff was pulled over by Northampton officers Wilson and Barry while traveling on Main Street in Northampton. They accused him of having a modified exhaust and illegal window tint. Plaintiff said they were harassing him and requested a supervisor. The officers gave him a citation and threatened Plaintiff with arrest for trespassing. Plaintiff filed complaints against Wilson and Barry with the police department. On March 5, the police department assigned Captain Powers as the investigating officers for the allegations against the four officers.

On March 17, 2020, Plaintiff went to the police department for an update. Powers stated the officers were not harassing Plaintiff but rather Plaintiff was drawing attention to himself because he was videotaping officers. He was told to stop recording officers and he would not be targeted. Powers asserted the officers felt threatened by Plaintiff recording them in public. In addition, Powers told Plaintiff he had called the State Police to ask about Plaintiff's erratic driving on highway 91.

Plaintiff's complaint cites the Northampton Police Department's policy AOM-P-249 regarding recording of officers. The policy acknowledges that "the general public have a First Amendment right to record police officers in the public discharge of their duties, and that the right to record is not limited to streets and sidewalks – it includes areas where individuals have a legal right to be present." *Policy: Recording of Photographing of Police Officers, AOM: P-249*, https://www.northamptonpd.com/administration/policies-and-procedures/208-p249-recording-and-photographing-of-police-officer/file.html. Plaintiff's complaint notes the policy is a directive of Defendant Kasper, the police chief.

Two days later, on March 19, Wilson and another officer showed up at Plaintiff's residence and handed him a copy of "an immediate threat licence suspension from the Registry of Motor

Vehicles." According to Plaintiff, Wilson was laughing about the matter. Because of this order, which occurred at the start of the COVID-19 pandemic, Plaintiff was restricted from driving to find work. Plaintiff later learned that Netto had submitted the request for the order on March 13, 2020.

Defendants attached a copy of that request document with their motion to dismiss. (Request for License Suspension, Dkt. No. 7-1.) The document appears to be a Northampton Police Department form titled "Request for Immediate Threat License Suspension / Revocation" that is addressed to the Registry of Motor Vehicles. The form is dated March 13, 2020 and signed by Defendant Netto as the requesting officer and another individual where "Signature of Police Chief or Authorized Person" is required. (*Id.*) The basis for the request was as follows:

> Since the beginning of 2020, Maddison was involved in a road rage incident in our city. Since that time, he has been cited three times by this department for speeding, window tint violations, impeded operation, and altered exhaust. Since being cited, Maddison has shown up on traffic stops that he is not involved in to film police, putting the officers and stopped motor vehicles in danger. He has made it a point to stop in downtown traffic and yell obscenities out the window to officers on patrol. He has sought out officers working traffic details to film them and cuss them out. All of these incidents with Maddison were documented and are attached to support this request.

(*Id.*)

On March 19, Plaintiff was admitted to a hospital because of immense stress and because he felt the harassment had became so much that he wanted to commit suicide.

III. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is "inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plaint statement of the claim showing that the pleader is entitled to relief.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). "A 'short and plain' statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 12 (alteration in original) (quoting *Twombly*, 550 U.S. at 555). But "to 'show' an entitlement to relief a

complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). When assessing whether a complaint makes a sufficient showing, the court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences in Plaintiff's favor. *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). But the court must identify and disregard statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause. *Ocasio-Hernandez*, 640 F.3d at 12. "Exhibits attached to the complaint are properly considered part of the pleading" and, in addition, when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 16–17 (1st Cir. 1998)).

## IV. DISCUSSION

Defendants' motion focuses on the First Amendment claim, which implicates federal question jurisdiction. As an initial matter, under the liberal pleading standard that is applied where a plaintiff is proceeding *pro se*, the court construes the allegations in the complaint to set forth a 42 U.S.C. § 1983 claim based on a violation of the First Amendment. *See Brown v. Lucas*, No. 16-10977-GAO, 2017 WL 1227921, at *1 (D. Mass. Mar. 31, 2017). To "sustain a claim under § 1983, the plaintiff must allege that a person acting 'under color of state law' has 'deprived [him] of rights, privileges, or immunities secured by the United States Constitution or by federal law." *Id.* n.3 (quoting *Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997)).

      A.      DEFENDANT OFFICER NETTO

Defendants argue that the complaint does not allege that Officer Netto engaged in any actions so as to deprive Plaintiff of any rights under the First Amendment. But "[i]t is well established that claims of retaliation for the exercise of First Amendment rights are cognizable," *Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014), and "[s]peech by citizens on matters of public concern lies at the heart of the First Amendment." *Lane v. Franks*, 573 U.S. 228, 235–36 (2014). Plaintiff's complaint shows that he reported a concern about the conduct of Northampton police towards him. Later, when Plaintiff requested an update on his informal complaint, he was pulled over by Defendant Netto when only a mile away from the police station. In addition, the complaint shows that Netto pulled Plaintiff over on possibly pretextual reasons given that Plaintiff had passed inspection. Drawing all reasonable inferences in favor of Plaintiff, the Plaintiff's informal complaint regarding Northampton officers was a "substantial" or "motivating" factor for Officer Netto's retaliatory conduct. A week after filing a formal complaint against Netto, Plaintiff was again pulled over by other Northampton police officers and given a citation, further supporting the possibility Plaintiff was being retaliated against. Similarly supporting the plausibility that retaliation was driving these interactions, Plaintiff was told to stop videotaping officers because it was making the officers feel threated, despite "videotaping of public officials is an exercise of First Amendment liberties," *Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011), and is allowed under the Northampton Police Department's policy on videotaping. Shortly after, Netto submitted a request to suspend Plaintiff's driver's license. Plaintiff has not asserted claims against the other officers involved in these incidents, and he would need to request permission from the court to amend his complaint to do so. However, with respect to Defendant Netto, the court finds the complaint sufficiently states a section 1983 claim based on a violation of the First Amendment against him.

The court denies Defendant Netto's request to supplement his motion to address the

pendent state claims, which were not raised by the original motion.

      B.     DEFENDANTS MAYOR NARKEWICZ AND CHIEF KASPER

Defendants argue that the claims against Mayor Narkewicz and Chief Kasper should be dismissed because they are only based on a theory of supervisory liability, and Plaintiff has not shown an affirmative link between the behavior of the Northampton subordinate officers and the action or inaction of Narkewicz and Kasper. *Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009). The court agrees and will dismiss the section 1983 claims based on a violation of the First Amendment against them and decline to exercise supplemental jurisdiction over the remaining state law claims against them. *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 191 (1st Cir. 2011).

      C.     DEFENDANT CITY OF NORTHAMPTON

Lastly, the court will dismiss the section 1983 claim against the City of Northampton. *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) ("[A] plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, 'through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.' . . . Such a plaintiff must 'identify a municipal "policy" or "custom" that caused the plaintiff's injury.'" (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–404 (1997))). The court will also decline to exercise supplemental jurisdiction over the remaining state law claims against it.

V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. No. 6) is DENIED as to Defendant Netto and GRANTED as to Defendants Narkewicz, Kasper, and the City of Northampton. The clerk's office is directed to set a scheduling conference.

It is So Ordered.

                                      /s/ Mark G. Mastroianni
                                      MARK G. MASTROIANNI
                                      United States District Judge